IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO.: 1:19-cr-232 |
| Plaintiff, | ) | |
| | ) | JUDGE NUGENT |
| v. | ) | |
| | ) | |
| CHRISTOPHER ALSTON | ) | SENTENCING MEMORANDUM |
| | ) | MOTION TO RECOMMEND |
| Defendant. | ) | DRUG PROGRAM |

I

The Defendant, Christopher James Alston, and his cousin Jerome Noble went to the Circle K store to purchase refreshments. Christopher had been drinking. Christopher and his cousin had a previous confrontation with the brothers, Dakota and Travis Burdette.

Christopher and Jerome left the store and were in the parking lot. Shortly thereafter, both Burdettes also left the store. The Burdettes walked past Christopher and words were exchanged.

The Burdettes got into their vehicle.

Christopher was in the parking lot, several yards from the driver's side door of the Burdettes' vehicle. Jerome was also in the parking lot and several yards away from the passenger side of the Burdettes' vehicle. Jerome walked to the front passenger side of the car where one of the Burdettes' was seated.

When Jerome was next to the front passenger car door, flashes of gunshost can be seen between Jerome and the two men seated inside the car. Jerome fell on the asphalt parking lot. The driver of the Burdettes' vehicle backed out of the parking space and drove away.

Christopher walked to the motionless body of his cousin, Jerome. Christopher bent down and turned Jerome's body. Jerome was dead.

Christopher started to yell. He paced around Jerome's body. He moved his arms up and down. To say that Christoper lost his composure is an understatement.

Christopher saw a gun that was possessed by Jerome. He picked up the gun. Christopher walked a bit and he tossed it into the snow. It appeared to this defense counsel that the tossing of the gun was a mindless act.

Police officers arrived at the scene. Christopher was still shaking.

The officer noticed a bloody footprint leading away from the body of Jerome. The officer noticed a hole in the snow that was piled up near the building. Inside the hole was a magazine. PSR, ¶10. The police officer also found the gun. The Government charged Christopher with the crime of felon in possession of a firearm.

II

Christopher grew up in a neighborhood that was filled with violence and drugs. PSR, ¶76. Chris was raised by his grandmother. Chris' mother was an alcoholic and his father was addicted to drugs. PSR, ¶ 76. Chris' father came around only when he needed money. Id. Chris stated that he was constantly pressured to use drugs when he was young. PSR, ¶76.

Christopher is currently suffering from depression and experiences post traumatic stress after seeing his cousin shot and killed. PSR, ¶ 79. Christopher has expressed having thoughts of self harm, but has never acted on them. PSR, ¶79.

Christopher started using marijuana when he was 12 years old. His use of marijuana gradually increased to a point where he was using marijuana every day. PSR, ¶80. Chris' alcohol use started at age 15, and, also, gradually increased to a point where he was drinking on a daily basis. Id. Chris started using cocaine when he was 18. Id. Christopher's only periods of sobriety were when he was incarcerated. PSR, ¶ 80. Christopher made a bad decision. But, with Christopher's background, who was ever there to teach him how to make good decision?  18 USC sec. 3553(a)(1).

Christopher has a serious problem with substance abuse, both legal substances and illegal substances. Had he been sober, Christopher would have probably have left the store and avoided this trouble.  Christopher was not sober.

The "nature and circumstances" of this offense is not the typical scenario of a felon in possession charge. 18 USC sec. 3553(a)(1).

Christopher did not possess a gun to aide in a robbery, a burglary or a drug transaction.  In other words, Christopher did not possess a gun to commit an offense. When Christopher picked up the gun and tossed it into the snow, he was reacting to the sudden and brutal death of his cousin.  Christopher lost his composure and experienced a mindless fit of sadness.  18 USC sec. 3553(a)(1).

For this particular offense, drug and alcohol therapy, i.e. the 500 hour drug program, would "afford adequate deterrence to criminal conduct and protect the public" much better than incarceration. The 500 hour drug program will give Christopher tools to deal with his addiction and to keep himself sober. Drug and alcohol therapy would protect the public and help Christopher control his addictions. 18 USC 3553(a)(2)(B), (C) and (D).

Christopher's addiction problem will not go away simply by locking him up. He needs therapy. Christopher needs the 500 drug program.

Even though this was an illegal possession of a firearm, Christopher did not contemplate using the gun. He picked up the gun after all the shooting was done. When Christopher possessed the firearm, Christopher engaged in no violence, let alone gun violence.

The defense moves this Court to recommend Christopher's acceptance into the 500 hour drug program. Not only does Christopher need the drug program, completion of this program will protect the public.

Respectfully submitted,

*/s/Joseph W. Gardner*
JOSEPH W. GARDNER #0033400
19 E Front St.
Youngstown, OH 44503
Phone: (330) 533-1118
Fax: (330) 743-6323
JWG1118@gmail.com
Attorney for Defendant

**CERTIFICATION**

I hereby certify that on November 18, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular US mail. Parties may access this filing through the Court's system.

*/s/Joseph W. Gardner*
JOSEPH W. GARDNER #0033400
Attorney for Defendant